## BRIDGET THERESA GORMAN vs. THOMAS K. FITTS.

First Judicial District, Hartford, January Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

In an action for breach of promise of marriage, acts and conversations indicating a relation of intimacy and affection between the parties are admissible in evidence in support of the alleged offer of marriage; and it is immaterial that some of them occurred when the plaintiff had a husband living.

The remoteness of such evidence detracts from its weight, but it is within the discretion of the trial court to admit evidence of acts which occurred twenty years or more before the alleged promise.

It must be presumed, unless the contrary appears, that a jury followed the instructions of the court in making up its verdict.

An error of the trial judge in admitting testimony may be subsequently cured by clear and explicit instructions to the jury to exclude it from their consideration in deciding the case.

It is within the discretion of the trial court to permit a party to be asked on his cross-examination whether he believed his adversary to be a truthful person, if the answer may have some bearing on the credibility of his previous statements.

The recipient of a letter who has testified to its destruction, may be cross-examined as to the correctness of what purports to be a copy, without preliminary proof that it is in fact such.

The defendant testified that pursuant to the written request of B, then and now the plaintiff's attorney and who was conducting the cause, as such, he called at B's office, before suit had been brought, and, after he had told his story, B said to him that the claim was evidently blackmail and that he, B, would have nothing further to do with it; that B asked him what he, the defendant, would do in case some shyster brought suit, and that he replied that in such event he would employ him, B, in defense, to which proposed employment B assented. This evidence, which was uncontradicted by B, having been relied upon in argument by defendant's counsel to discredit the plaintiff's cause, the judge in his charge to the jury informed them of the rule of professional etiquette which treated the positions of trial lawyer and material witness as incompatible, and the reluctance of courts to have counsel act in such dual capacity, and then said to them that it did not follow that because no one contradicted the defendant's statement in respect to B, they must accept it as true; that it was their duty to test it by acknowledged standards of human conduct, by its own inherent probability or improbability; that the professional conduct tes-

tified to would be repellent to the standards of practice in this State, and, if true, would be grounds for disbarment. *Held* that it was unquestionably proper for the court to call the attention of the jury to these rules and principles, and that the question as to how far their application should be pressed in a given case was a matter within the sound discretion of the court; that such a discretion might be abused, but that in view of the peculiar circumstances it did not appear to have been in the present case; and that it could not be said, upon the facts disclosed by the record, that the charge in other respects was an abuse of the discretionary power of the court to comment upon the evidence.

Argued January 10th—decided April 14th, 1908.

ACTION for breach of promise of marriage, brought to the Superior Court in Hartford County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment for plaintiff. *No error.*

*Arthur F. Eggleston* and *William A. King,* for the appellant (defendant).

*Charles E. Perkins* and *Joseph L. Barbour,* for the appellee (plaintiff).

BALDWIN, C. J. On the trial it was undisputed that the plaintiff and defendant became first acquainted in 1869, when she was a girl of sixteen and he a man of thirty-eight, both being in the service of one Clark in Hartford, she as a housemaid, and he as a gardener; that in 1872 she married one Gorman, who separated himself from her in 1888, returning after four years, leaving her again in 1901, and dying in April, 1903; and that in the latter year the defendant was a farmer in Ashford, having represented his town three times in the General Assembly and also in the Constitutional Convention of 1902, and owning considerable property. He denied having made any offer or promise of marriage. The action was brought in 1906.

In connection with testimony from the plaintiff that he had made her such a promise early in November, 1903, she was permitted to state that, while they were in Mr. Clark's

service, the defendant paid her special attentions, made her presents, and took her to drive and to the theater, and on an excursion to New London ; that in 1872, after publication of the banns of her marriage, the defendant told her that he felt very badly about it, had meant to marry her, and if he had been more forward would have been in Mr. Gorman's place ; that when this was said both fell into tears ; and that, while her husband was living apart from her, the defendant told her that, when the desertion had continued long enough to enable her to get a divorce, he would marry her.

The evidence thus admitted tended to show that, during certain periods in the past, the parties had been in relations of intimacy and affection. Had the acts and conversations described taken place shortly before the time when, as the plaintiff asserted, an offer of marriage was made by the defendant, proof of them would plainly have been admissible as tending to show that such an offer was a natural consequence. That some of them occurred when the plaintiff had a husband living was immaterial. *Smith* v. *Hall*, 69 Conn. 651, 664, 38 Atl. 386. Their remoteness detracted from their weight; but it was well within the discretion of the trial court to admit proof that they took place. *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 Atl. 998 ; *Leonard* v. *Gillette*, 79 Conn. 664, 668, 66 Atl. 502.

For similar reasons there was no error in receiving the plaintiff's testimony that, after her husband left her the second time, the defendant expressed to her his regret that he had not built her a house and given it to her as a residence for herself and her children.

Having further testified, without objection or exception, that in November, 1903, she was keeping about twenty boarders in Hartford, and upon and in consequence of her engagement to marry the defendant gave them each notice to go, and broke up her establishment, she was allowed to testify, against objection, that in giving these notices she informed one of her boarders, a Miss Welch, that she did not intend to keep boarders any longer, as

she was engaged to be married to the defendant in the following spring. Miss Welch was also allowed, against objection, to testify to the same point. It was not claimed that the defendant was present when these remarks were made. No averment was made in the complaint that the plaintiff had been in business as a boarding-house keeper and dropped it in consequence of the promise of marriage, nor were any special damages claimed. There was other testimony that the defendant, upon their engagement, requested her to dismiss her boarders, so that she could prepare for their marriage.

It is unnecessary to inquire whether the testimony now in question was properly received; because in the charge to the jury they were informed that they must exclude it altogether from consideration, as in the opinion of the court the correctness of admitting it might be questionable. It is clearly to be presumed, when the contrary does not appear, that a jury follows the instructions of the court in making up its verdict. *Pennsylvania Co.* v. *Roy*, 102 U. S. 451, 459. An error in admitting testimony can be cured by suitable directions to the jury subsequently given; and those in the case at bar were clear and explicit. Any other doctrine would seriously impair the value of the jury system. In the course of a trial, objections to the reception of evidence must often be passed on, with little opportunity for reflection or for consultation of authorities. It makes for the due administration of justice that errors in such rulings should be the subject of correction at any time before the cause is submitted to the jury.

The plaintiff introduced two letters which she sent to the defendant in September and October, 1905, stating that he had long professed affection for her; quoting some lines of verse, expressive of such a sentiment, as having been addressed to her by him in her girlhood; referring to an engagement of marriage between them as made in 1903, and publicly announced; and reproaching him for what seemed to be a recent change in his feelings. On the defendant's cross-examination he—having testified that he had never

known the plaintiff not to be a truthful woman ; that he never sent her the lines of verse ; and that he had never written to her in his life—was asked if he believed her to be a truthful woman. The question was objected to, but admitted, and he answered, yes. The answer had some bearing on the question of the truth of his statement that he had never written to her. He admitted that he had received the letters. In view of their statements as to his expressions of affection and engagement of marriage, made by one whom he believed to be a truthful person, why, if they were erroneous, did he not answer them and make some explanation or denial ? This was an argument that might not unfairly be pressed upon the jury, and the admission of this foundation for it was well within the discretion of the court. *Leonard* v. *Gillette*, 79 Conn. 664, 669, 66 Atl. 502.

The defendant, on his direct examination, testified that shortly before the suit was brought he received a letter from Mr. Barbour, the attorney who afterward instituted it and was trying the case for the plaintiff as her sole counsel, requesting him to call at his office ; that he called there and talked matters over with him ; that Mr. Barbour then said it was evidently a case of blackmail, and he would have nothing more to do with it, and took his letter from the defendant, tore it up and threw the fragments into the waste basket; that he then asked the defendant what he would do if she should put the case into the hands of some shyster, who would bring suit; and that he (the defendant) replied that in that event he would employ Mr. Barbour to represent him in the defense, to which proposed employment Mr. Barbour assented.

On his cross-examination, the plaintiff's attorney, Mr. Barbour, showed him a paper, and asked if it was not a copy of the letter as to which he had testified. His answer was that part of it was the same as part of that letter, and as to the rest he could not say that it was not. There was no error in ·overruling objections to this question and answer. The defendant had himself stated that the original

had been destroyed in his presence. That it had, according to his testimony, been destroyed by the plaintiff's attorney was immaterial. Being no longer in existence, it was within the sound discretion of the trial court to allow cross-examination as to the correctness of what purported to be a copy; nor was it necessary first to offer proof that it was in fact such. *Fitch* v. *Bogue*, 19 Conn. 285, 289.

Several other rulings on evidence presented by the reasons of appeal are either so obviously correct, or so unimportant, that they require no particular consideration.

The defendant's counsel insisted strongly, in argument, that the plaintiff's own attorney had said that the case was one of blackmail. In the charge to the jury the court, after remarking that the testimony of the defendant as to his interview with Mr. Barbour stood uncontradicted, referred to a " wholesome rule of professional etiquette which holds the positions of trial lawyer and material witness to be incompatible; " stated " the reluctance of courts to have counsel act in such a dual capacity, unless imperative necessity compels him; " and then made the following observations: " It may be that the plaintiff's attorney, mindful of this salutary rule, was deterred from giving as a witness his version of what took place at this interview. It does not follow that because the witness states a fact, and no one contradicts it, the jury must accept it as true. The credibility of that witness, of that statement, is for the jury, for the jury to judge of the witness' whole statement, and his demeanor as witness; and it is to be tested by its own inherent probability and improbability. Many, many times, triers can ascertain the truth or fiction in the court room, by the simple test of seeing whether the evidence under examination is probable or improbable,— whether it squares with acknowledged standards of human conduct, or is so at variance therewith as to throw upon it the unmistakable brand of untruth. It is proper for you to test this interview as the defendant details it, and reach the conclusion whether in your judgment it accords with the probabilities or not.

"Is it likely, or otherwise, that the plaintiff's attorney wrote that first letter, and upon the defendant's calling shortly in response and making his own statement of his relations with this woman, that this attorney forthwith called his client's case one of blackmail; and then and there, not having seen her, said he would abandon her cause, and sought employment from the man he had been employed to collect damages from, while that employment with the woman had not been terminated?

"It goes without saying, that such a course of professional conduct would be repellent to the standards of legal practice which prevail in this State; and would, if true, be ample grounds for permanent disbarment from practice of that attorney. Such a course of professional conduct would indeed have been wicked, and foolish as well. It is for you to pass upon the truth of the defendant's statement in this particular, and to give it such consideration as you think it is entitled to.

"If you shall find that this interview as related by the defendant never occurred, you ought to ask yourselves what was the purpose of the defendant, if any, in stating it? And you ought to consider whether the solution of that helps you to tell whether the rest of the defendant's evidence on important points is true or untrue.

"It is within the province of the jury to disregard the testimony of a witness when they find such witness has intentionally told an untruth on the witness-stand. This rule of law does not compel such treatment; it merely justifies it, if in the sound judgment of the jury it deserves it; if the untruth has shattered your confidence in the balance of the witness's testimony, you have the right to, the undoubted right, to disregard it. It is for your judgment."

It was unquestionably proper to inform the jury that there was an established rule which, under ordinary circumstances, rendered it improper for an attorney engaged in the trial of a cause to testify during that trial to a material point; and other rules which peremptorily forbade an at-

torney to abandon a client in his absence and without his consent, and transfer his services to the adverse party; as well as to instruct them that testimony was not necessarily to be accepted as true because it was uncontradicted, but might often be judged to good purpose according as the facts stated did or did not square with acknowledged standards of human conduct.

As to how far the application of these rules and principles to the case in hand should be pressed on the attention of the jury, was a matter within the sound discretion of the court. No doubt such a discretion may be abused; but under the peculiar circumstances before the court, we do not think that such abuse appears.

The same considerations are sufficient to sustain the charge on the point of *falsus in uno, falsus in omnibus.* It, no doubt, indicated that in the opinion of the court the case might be one for the application of that doctrine; but in so doing did not go beyond the bounds of judicial power or propriety. *First Baptist Church* v. *Rouse,* 21 Conn. 160, 167; *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 id. 1, 13, 40 Atl. 1046; *Crotty* v. *Danbury,* 79 Conn. 379, 387, 65 Atl. 147; *Joyce* v. *Joyce,* 80 Conn. 88, 90, 67 Atl. 374.

The plaintiff testified that the two letters of September and October, 1905, were written at her dictation by her daughter, the latter sometimes suggesting changes in the form of the language to be used, which she (the plaintiff) approved. It was undisputed that the parties had made two excursions from Hartford to Springfield, going in the morning and returning in the evening, during each of which they spent a short time in the course of the day, while waiting for a train, in a hotel where the defendant registered as "Thomas K. Fitts and wife." He introduced evidence that he thus registered at her request: the plaintiff introduced evidence that he thus registered without her knowledge.

In the concluding portion of the charge, the following language was used: "Is it likely or probable, as the defendant claims, that this plaintiff conceived and planned

this contract of marriage she testified to, with all of its detail, in her own and her daughter's imagination, without its having any foundation of truth to rest upon? And is her entire statement upon the witness-stand in these particulars inexcusable perjury or not? These are considerations for your solution if you deem them pertinent in the proper determination of this case. Is it likely or not that all of this conduct of the defendant, these many details which she has testified to, were done by him because she requested it? It is for you to say if you deem them pertinent to your determination of the truth. Is it likely or not that the defendant registered twice at the hotel 'Thomas K. Fitts and wife' at her suggestion; or are his conduct and acts attributable to the facts of his affection for her? It is for you to say if you deem these considerations pertinent to the case.

"The facts, gentlemen, are for you; not for the court. The inferences to be drawn are for you, not for the court. The search for the truth is for you."

Regarding this language, we repeat what we have in effect remarked respecting other parts of the charge complained of, that we cannot, upon the facts before us, say that it was an abuse of the discretionary power of the court to comment upon the evidence.

There is no error.

In this opinion the other judges concurred.