## Lee v. Stanfill.

(Decided June 16, 1916.)

### Appeal from Whitley Circuit Court.

1. Libel and Slander—Words Actionable Per Se.—The words, "J. L. tried to hire a man to kill H. T.," charge an overt act in a solicitation to commit a crime, constituting a misdemeanor at com-

mon law, punishable by fine or imprisonment or both, and as the punishment by imprisonment constitutes an infamous punishment, the words are slanderous and actionable per se.

2. Libel and Slander—Malice Presumed.—Where words slanderous per se are falsely spoken, malice will be presumed.

3. Libel and Slander—Pleading.—An averment of the petition that slanderous words were "falsely and maliciously said," is a sufficient allegation that the words were false.

4. Libel and Slander—Parties—Misnomer—When Not Fatally Defective.—Where in an action for slander the Christian name of the defendant appearing in the body of the petition was not the same as in the caption, but evident that this was a mistake, the prayer of the petition asking judgment against defendant as named in the caption and upon whom summons was served. Held, that the mistake did not render the petition fatally defective on demurrer. The defendant's remedy was a motion to require the correction by plaintiff of the mistake in name.

ROSE & POPE for appellant.

H. C. GILLIS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal prosecuted from a judgment of the Whitley circuit court sustaining a general demurrer to the petition and dismissing same, in an action for slander brought by the appellant, John Lee, against the appellee, Lafayette Stanfill. It is alleged in the petition that:

"The defendant, Lee Stanfill, on or about the .......... day of June, 1915, in Whitley county, Kentucky, falsely and maliciously said of and concerning this plaintiff, 'John Lee tried to hire a man to kill Hiram Taylor,' thereby imputing to this plaintiff the crime of attempt at murder. That said words were said of and concerning this plaintiff in the presence and hearing of divers persons. Said statements were made directly in the presence of R. F. Wells and that by reason of said false and slanderous statements made by the defendant of and concerning this plaintiff that he has been damaged and injured in his credit and circumstances and all to the damage of this plaintiff in the full sum of two thousand ($2,000.00) dollars."

The demurrer seems to have been sustained by the circuit court upon the ground that the words, "John Lee tried to hire a man to kill Hiram Taylor," do not import a crime or misdemeanor and are not actionable *per*

*se.* It is, therefore, necessary to determine whether the court was mistaken in this conclusion.

"A charge of an attempt to commit a crime is, when such attempt constitutes a criminal offense, actionable *per se* in the same way and under the same conditions as charges of other crimes, but an oral charge of an attempt to commit a murder will not be actionable *per se* where such attempt does not of itself constitute a definite, substantive offense. So all the elements necessary to constitute an attempt must be contained in the charge." 25 Cyc. 277.

"Under the general rule making imputations of the commission of crimes of a specific character actionable *per se,* a charge of solicitation to commit crime may be actionable *per se.*" 25 Cyc. 278.

The rule announced in the foregoing excerpts from Cyc. is elaborately discussed in Mills and Wife v. Wimp, 10 B. Mon. 417. There the alleged slanderous words, spoken by the defendant, were: "She (the wife of Mills) put poison in the barrel of drinking water to poison me." "He had said she had poison in his barrel of drinking water to kill him and he would say it again, for she did do it." In holding that these words were slanderous, the court said:

"A spoken communication is not held to be slanderous, in the legal meaning of the word, unless it amount to a charge of having been guilty of a crime or of some misdemeanor, where imprisonment or other corporal punishment is the primary and immediate punishment for the offence, or of having one of certain contagious disorders, or is prejudicial in relation to office, trade, &c., or because being disparaging they have been the cause of specific damage to the party charged:

(*Cook on Defamation,* 7, 8, 12; *Kent's Com.*): "We suppose that the misdemeanor alluded to in the text, should not be understood as embracing every misdemeanor, but only to embrace such as imply some heinous offense, involving moral turpitude. The words charged in this declaration do not impute to the plaintiff an offense deemed felony at common law, and as they were spoken before the passage of a recent act of the legislature on this subject, whether they are actionable or not, must be tested by the common law. If they charged any indictable offense, it is only that of a misdemeanor.

Misdemeanors are defined to be all offences lower than felonies which may be the subject of indictment. (*Wharton's Am. Crim. Law*, 2): They are divided into two classes: First, such as are *mala in se* or penal at common law; and, second, such as are *mala prohibita* or penal by statute. It is said that at common law whatever mischievously affects the person or property of another, or openly outrages decency or disturbs public order, or is injurious to public morals, is a misdemeanor; * * * an act which tends or incites to the commission of any specific offence, or to solicit its commission, if it has a direct and immediate tendency to the commission of the offence, is a misdemeanor: (Wharton, 3, 4, 5.) Again, it is held that where an act is done, if it be accompanied with malicious and unlawful intent, though the act itself would otherwise have been innocent, the intent being criminal, the act becomes criminal and punishable: (Wharton, note 1., p. 5). Charging another with solicitation to commit a felony is actionable, as imputing a misdemeanor: (2 East R. 5, 6.)

"We cite also the following adjudged cases, in which the words charged have been held to be actionable as slanderous: 'Talbot and Gough agreed to hire a man to kill me, and that Gough should show me to the hired man to kill me;' (*Cro. Eliz.* 191; *Cro. Car.* 140.) 'The plaintiff colluded with A and B to make a person swear falsely before a justice of the peace in a suit pending before him'; (5 Binn. 121): 'He sought to murder me, and I can prove it,' because the term *sought* is shown by the latter words to refer to some overt act capable of proof; (3 Bulstr. 167). Other authorities might be referred to supporting the foregoing, but these are deemed sufficient to determine the question before us.

"If the words 'he sought to murder me, and I can prove it,' and the case cited from East, be sufficient to maintain an action for slander, because the intent to kill was manifested by some overt act capable of proof, it would seem almost necessarily to follow that the words charged in this declaration ought so to be holden. Here is a direct charge of intention to kill, and that that intention was attempted to be carried into execution by actually putting poison in the defendant's barrel of drinking water. An overt act is charged which, if truly charged, is susceptible of proof. * * * It seems to us, in view of the authorities referred to, and of the de-

grading imputation cast on the plaintiff, the words charged in the declaration ought to be held to be slanderous, and for the speaking of which an action may be maintained."

The words, "John Lee tried to hire a man to kill Hiram Taylor," alleged to have been spoken to appellant by appellee, charged the former with a misdemeanor, for the overt act of one in attempting to hire another to commit murder, which is a felony, is a solicitation to commit a crime, constituting a misdemeanor at the common law punishable by fine or imprisonment, or both. As defined in Nider v. Commonwealth, 140 Ky. 684: "An attempt to commit a crime is an act done in part execution of the criminal design amounting to more than mere preparation, but falling short of the actual consummation; and possessing, except for a failure to consummate, all the elements of the substantive crime." In the same case it was also held that, "Unless there is some other punishment imposed by statute, an attempt to commit a crime is a misdemeanor and punishable by fine or imprisonment in the county jail, or both, in the discretion of the jury."

It requires no argument to show that the act charged involves moral turpitude, and in 25 Cyc. 272, it is said:

"Moral turpitude in this connection has been defined to be an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowman or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

Tested by the rule announced in the authorities, *supra,* it is manifest that the words alleged in the petition to have been uttered by appellee of and concerning the appellant must be held to be slanderous *per se* and therefore actionable, because if true, they show him guilty of a misdemeanor punishable by fine or imprisonment, or both, in the discretion of a jury, and the punishment by imprisonment would constitute an infamous punishment in the meaning of the law. If the words were falsely spoken the law will presume malice in the speaking, without proof of actual malice.

It is contended by appellee that the petition in this case is defective in that it does not properly allege that the words spoken by appellee were false, and that the ruling of the circuit court in sustaining the demurrer was

authorized on this ground if no other existed. This contention is unsound. The falsity of the alleged slanderous words is expressly charged by the averment of the petition that they were falsely and maliciously said of and concerning the appellant. This was sufficient without a subsequent further averment that the words were false.

It is further insisted for appellee that the demurrer was properly sustained because, although the appellee, Lafayette Stanfill, is named in the caption of the petition as defendant and was summoned in the action as such, in the body of the petition it is alleged that the slanderous words complained of were spoken by Lee Stanfill, and as it does not appear from anything alleged in the petition that Lee Stanfill and Lafayette Stanfill are one and the same person, or that Lee is an alias of Lafayette, it must be assumed that they are different persons; therefore the fact that the words were spoken by Lee Stanfill cannot make Lafayette Stanfill responsible for the speaking thereof. We also regard this contention as unsound. It was formerly the rule that a mistake in either the name of the plaintiff or defendant constituted a variance or error fatal to the action, but this does not now seem to be so.

In Newman's Pleading & Practice, section 219b, it is said:

"If there be a mistake in the name of either the plaintiff or defendant, it will not be as fatal to the action now as it formerly was. If the plaintiff sued by a wrong name, it was formerly a matter defeating the action, if relied on by appropriate plea; but now the defect can be reached only by motion to correct the mistake and state the name of the party correctly. It is true that when an action is brought and the proof shows no liability to the plaintiff who has sued, there can be no recovery by him against the defendant; and if the person to whom the liability exists is shown to be another and different person, there can be no amendment allowed which changes the real parties to the action. But where it appears that the liability is to the person who really brings the suit, and that there is merely a mistake in the true name, or a misnomer as it is called, the court will usually allow an amendment correcting the mistake upon such terms as may be just. * * * The foregoing rules apply, for the most part, equally to a mistake

in the name of the defendant as of the plaintiff. When, however, a defendant is sued by a wrong name, he can ordinarily avail himself of the error only by motion to correct the mistake at the cost of the plaintiff. If a judgment be rendered against him by a wrong name, where he has appeared, and defended without objection in his right name, it will nevertheless be valid and binding. * * *'' Civil Code, section 134; Anderson v. Rogers, 1 Bush 200.

It seems evident that the name of Lee Stanfill, appearing in the body of the petition, is a mistake. This is obvious not only from the fact that the appellee, Lafayette Stanfill, is named in the caption as the defendant, but the prayer of the petition asks judgment against him for the damages claimed as resulting from the utterance of the slanderous words charged; and besides, he was served with summons as defendant in the action. In view of these facts his remedy for the correction of the error in name was a motion to cause the same to be corrected, and the mistake did not render the petition fatally defective on demurrer.

Upon the return of the case to the circuit court, if appellant desires to proceed with the action, the mistake in question can be corrected by an amended petition, and we would suggest that if such amendment is made he also allege therein damage to his feelings and reputation from the speaking of the slanderous words charged. As it is, the petition merely charges that by the speaking thereof he was injured in his credit and circumstances, such damages being special rather than general in their character.

For the reasons indicated the judgment is reversed and cause remanded for further proceedings consistent with the opinion. Whole court sitting.