### SAMUEL DRAZEN *vs.* THE NEW HAVEN TAXICAB COMPANY ET AL.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, JS.

It is within the discretion of the trial court to reverse, upon its own motion, a ruling admitting certain evidence, and to withdraw such evidence from the consideration of the jury; and if the jury are suitably instructed to disregard that particular evidence, the error originally committed in its admission is cured. Any other rule would seriously impair the value of the jury system.

In the present case the plaintiff offered in rebuttal what purported to be a record of the conviction of one of the defendants' witnesses of statutory burglary, which was admitted against the defendants' objection that the commission of such a crime did not tend to affect one's character for truth and veracity. At a later stage of the trial the court of its own motion reversed its ruling and excluded the record, which had not been read to the jury, upon the ground that the identity of the witness with the person named in the record was not entirely clear; and instructed the jury to give no consideration whatever to. the record. *Held* that under these circumstances the defendants could not have been prejudiced by the action taken, unless it were to be assumed that the jury had deliberately disregarded the instruction of the court,—an assumption wholly without justification upon the record of the cause.

In withdrawing this record from the consideration of the jury, the trial judge said, among other things, that he recalled his original ruling somewhat against his own better judgment. *Held* that such expression did not discredit the court's ruling, as the defendants

Drazen v. New Haven Taxicab Co.

contended, but, on the contrary, was calculated to cause the jury to give stricter heed to the caution addressed to them.

Frankness upon the part of the court in suggesting the questionableness of its ruling cannot be made a ground of error.

Under our statute, § 5705, the infamous crimes, conviction for which may be shown for the purpose of affecting the credit of a witness, embrace all crimes of that character and not merely those known as such by common law, to wit, treason, felony, and the *crimen falsi*. The last-named class of crimes—whatever may be its limitations—includes all those which may injuriously affect the administration of justice through the introduction of falsehood and fraud, and expands as society progresses and new crimes are created for its protection.

The common-law classification of treason, felony, and the *crimen falsi*, does not cover the field of infamous crimes, nor furnish the material from which to formulate a rule of precision and of general applicability.

Some courts have adopted the rule that crimes which are punishable by imprisonment in the State prison or penitentiary are infamous; others, that the nature of the crime, whether involving moral turpitude or not, is the test. As between these two methods of classification, the latter is preferable, since the presence or absence of moral turpitude will always characterize the crime, while the punishment may or may not characterize the infamous crime.

In this State crimes whose punishment must be imprisonment in the State prison are regarded as necessarily infamous, also those crimes which may be punished by such imprisonment, when the nature of the particular crime involves moral turpitude; and crimes whose penalty must be imprisonment in the county jail will be regarded as infamous when the nature of the crime involves moral turpitude and the term of imprisonment may be six months or more.

This classification undoubtedly does not include certain lesser crimes which do involve moral turpitude, but such offenses have never been regarded in this State as infamous crimes.

Statutory burglary, a necessary ingredient of which is the intent to steal, involves moral turpitude and is an infamous crime, conviction for which may be shown to affect the credibility of a witness.

Submitted on briefs October 26th—decided December 22d, 1920.

ACTION to recover damages for injuries to plaintiff's automobile, alleged to have been caused by the defendants' negligence, brought to the Superior Court in New Haven County and tried to the jury before *Webb, J.;* verdict and judgment for the plaintiff for $1,400, and appeal by defendants. *No error.*

*Prentice W. Chase* and *Ernest L. Averill*, for the appellants (defendants).

*Philip Pond*, for the appellee (plaintiff).

WHEELER, C. J. This action was brought to recover damages for injuries to the plaintiff's automobile resulting from a collision with the automobile of defendants, caused by the negligent operation of their servant. The principal question at issue was as to whether the accident was due to the negligence of the driver of defendants, or of plaintiff.

The defendants produced, as a witness in chief, Monashkin, the operator of the automobile at the time of the accident, and he testified as to the occurrences at that time. In his rebuttal, plaintiff offered a record of the conviction of the witness of the crime of statutory burglary. Objection was made on the ground that the record of this crime did not tend to affect the character of the witness as to truth and veracity. The objection was overruled and the record was marked as an exhibit, and to this ruling the defendants excepted. At a subsequent point in the trial, the court stated that inasmuch as the question of the identification of the person convicted by the record introduced, with the witness, was not entirely clear, it would reverse the ruling and sustain the objection to the admission of the record. No objection upon the ground of want of adequate identification had been made by the defendants. Despite this, the exclusion of the offer already admitted was within the discretion of the court. "An error in admitting testimony can be cured by suitable directions to the jury subsequently given; . . . any other doctrine would seriously impair the value of the jury system." *Gorman* v. *Fitts*, 80 Conn. 531, 534, 69 Atl. 357. Unless it clearly appears that prejudice has come

to the party ruled against in the first instance, which the reversal of the ruling will not remove, error cannot be successfully based upon the erroneous admission of the evidence. In this case it does not appear that the record of conviction was read, and it does appear that the court gave the basis of its ruling as the inadequacy of the identification of the witness with the person named in the record of conviction, and that the court duly cautioned the jury that the record of conviction should not in any way be considered by it. Under these circumstances we do not see how the action of the court could have prejudiced the defendants' case, unless we assume that the jury deliberately disregarded the caution of the court, and the record does not permit such a deduction.

In withdrawing this record from the consideration of the jury, the trial judge said, among other things, that he recalled his ruling somewhat against his own better judgment, and this expression, counsel insist, discredited the court's ruling. The jury unquestionably understood the situation. They would, as it seems to us, be more apt to follow the caution of the court to disregard the evidence, withdrawn because of its reluctance to follow this course, than if the ruling had been made without this expression. Frankness on the part of the court suggesting the questionableness of its ruling, cannot be made a ground of error. *Gorman* v. *Fitts*, 80 Conn. 531, 534, 69 Atl. 357.

But if this were otherwise, and harmful prejudice might have resulted from the admission and subsequent rejection of the evidence if originally inadmissible, we still think no harmful error was committed except in the reversal of the ruling. The record was admissible to discredit the witness. The statute of 1848 (Chap. 44) now General Statutes, § 5705, provides that "no person shall be disqualified as a witness in any action by

reason . . . of his conviction of crime; but such . . . conviction may be shown for the purpose of affecting his credit." This statute was intended to remove the bar of disqualification from witnesses who had been convicted of crimes known as infamous crimes, and render such persons competent witnesses, but it provided that the record of conviction might be shown "for the purpose of affecting his credit." *Card* v. *Foot*, 57 Conn. 427, 18 Atl. 713.

The infamous crimes, conviction for which might be shown for the purpose of affecting the credibility of witnesses, were those crimes which were known to our law as infamous and not merely those so known to the common law. Infamous crimes at common law were treason, felony, and the *crimen falsi*. Felonies are those crimes which were such by our common law or have been made such by our statutes. *Fimara* v. *Garner*, 86 Conn. 434, 436, 85 Atl. 670. It has never been clear just what classes of crimes are included within the term *crimen falsi*. But it is certain that every species of the *crimen falsi* comes within the term infamous crimes. *Wick & Co.* v. *Baldwin*, 51 Ohio St. 51, 56, 36 N. E. 671. In *State* v. *Randolph*, 24 Conn. 363, 365, we said: "So far the courts have gone, and from these decisions it may be deduced, that the *crimen falsi* of the common law not only involves the charge of falsehood, but also is one which may injuriously affect the administration of justice, by the introduction of falsehood and fraud." It was thus the nature of the crime which determined at common law the crimes which fell within the *crimen falsi*. The limitation of infamous crimes, other than treason and felony, to those within the group of *crimen falsi*, would have excluded from the number of infamous crimes many crimes of grievous import which have been created by society to meet its necessities. Recognition of this need led Mr. Justice Gray to observe in *Ex parte*

*Wilson*, 114 U. S. 417, 427, 5 Sup. Ct. 1190: "What punishments shall be considered as infamous may be affected by the changes of public opinion from one age to another." Infamous crimes known to our common law of the period of 1800, are not all of the infamous crimes of to-day. And those in existence to-day will not necessarily be all in existence at a later day. Society progresses and law develops to meet its needs. And new crimes are created to protect it against new offenses.

Formulation of a rule by which infamous crimes may be designated with definiteness, has proved a source of trouble to the courts. The common-law classification of treason, felony, and the *crimen falsi*, does not cover the field, nor furnish the material from which to formulate a rule of precision and definiteness and one of general applicability. In their effort to evolve a satisfactory rule, courts of the United States and of the several States have adopted either the rule of the penalty, or that of the nature of the crime, for determining whether or not a crime is infamous. The courts of the United States and those of some of the States, have determined that crimes which are punishable by imprisonment in the State prison or penitentiary are infamous crimes. Other State courts have adopted the rule of ascertaining the nature of the crime, and holding those involving moral turpitude as infamous. The rule of the penalty has the merit of definiteness and consequent ease of enforcement. Under our law undoubtedly treason and all felonies are infamous crimes; and in our State every crime whose punishment must, by statute, be imprisonment in the State prison, is a felony. But in the great body of crime called misdemeanors, whose punishment may be in State prison, are found many crimes we have never regarded as infamous crimes. These crimes have no inherent quality of baseness or depravity, and hence do not involve in their commission

moral turpitude. They are unintentional crimes, and crimes *mala prohibita*. However just this rule of the penalty may prove in other jurisdictions, with us it would place within the category of infamous crimes not a few which are within the class of *mala prohibita* and are not inherently bad. For example, the penalty of our statute would make infamous crimes of the sale of lottery tickets; the sale or lease of implements for pool selling; the injury to police or fire alarm wires; the deprivation of rights on account of alienage, color or race. On the other hand, the rule determining infamous crimes by the nature of the crime would, unless qualified, make some crimes infamous though the maximum punishment prescribed is less, and often much less, than six months in the county jail. Logically, the quality and not the penalty of the crime should fix its classification, and crimes whose commission involves an inherent baseness and which are in conflict with those moral attributes upon which the relations of life are based are infamous. They are said to be those which involve moral turpitude. In itself this is a vague term, lacking precision. Bouvier's Law Dictionary (2 Rawle's Rev. 2247) gives the accepted legal definition of this term as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted . . . rule of right and duty between man and man." It includes anything done contrary to justice, honesty, modesty, or good morals. It has been said to embrace all crimes within the conception of the *crimen falsi* and more. *Holloway* v. *Holloway*, 126 Ga. 459, 460, 461, 55 S. E. 191. It is a term which conforms to and is consonant with the state of the public morals, hence it can never remain stationary. *Ex parte Mason*, 29 Or. 18, 23, 43 Pac. 651. It implies something in itself immoral. Inherent base-

ness is an ingredient of such a charge. Unintentional wrong, or an improper act done without unlawful or improper intent, does not carry with it the germs of moral turpitude. Intentional wrong or improper purpose, proceeding from and accompanied by moral turpitude, result in crimes which are infamous.

Satisfactory definition or explanation of this term has never yet been attained; in application the courts have been more successful, and as a whole, in those jurisdictions making this element the test, have been singularly consistent in ruling. A large list of these cases involving moral turpitude may be found in *Ex parte Mason*, 29 Or. 18, 21, 43 Pac. 651. A shorter list will be found in our case of *State* v. *Randolph*, 24 Conn. 363, 365. Additional authorities, which have come to our attention and which involve crimes which have been held to be infamous because involving moral turpitude, are: Larceny, *In re Henry*, 15 Idaho, 755, 758, 99 Pac. 1054; receiving stolen property, *In re Kirby*, 10 S. D. 322, 73 N. W. 92; *In re Thompson*, 37 Cal. App. 344, 174 Pac. 86; counseling young men not to register for military service of the United States, *In re Hofstede*, 31 Idaho, 448, 173 Pac. 1087; libel, that "J. L. tried to hire a man to kill H. T.," *Lee* v. *Stanfill*, 171 Ky. 71, 186 S. W. 1196; murder and voluntary manslaughter, *Holloway* v. *Holloway*, 126 Ga. 459, 460, 55 S. E. 191; slander charging larceny, *Jones* v. *Brinkley*, 174 N. Car. 23, 93 S. E. 372; use of mails to advertise the procuring of abortion, *Kemp* v. *Board of Medical Supervisors*, 46 App. D. C. 173, 181; use of mails to advertise articles for prevention of conception, *Halstead* v. *Nelson*, 36 Hun (N. Y.) 149. Crimes *mala prohibita*, and those based upon unintentional wrong in which it has been held or assumed that the element of moral turpitude was not involved, are noted in *Ex parte Mason*, 29 Or. 18, 43 Pac. 651, and *State* v. *Randolph*, 24 Conn. 363. Other instances

of crimes, held lacking in the element of moral turpitude, are: Assault, *Pollok* v. *State*, 101 S. W. Rep. (Texas) 231; carrying concealed weapons, *Ex parte Saraceno*, 182 Fed. Rep. 955; criminal libel not involving moral turpitude, *United States* v. *Uhl*, 127 C. C. A. 422, 210 Fed. Rep. 860; charge of lewdness, *State* v. *Bussay*, 38 R. I. 454, 96 Atl. 339; offenses against liquor laws, *Fort* v. *Brinkley*, 87 Ark. 400, 404, 112 S. W. 1084; *Swope* v. *State*, 4 Ala. App. 83, 58 So. 809; sale of cocaine, *Pippin* v. *State*, 197 Ala. 613, 78 So. 340; and removing boundary marks, *Young* v. *Miller*, 3 Hill (N. Y.) 21.

Between these two methods of classification of infamous crimes, we think the method of ascertaining the nature of the crime is the preferable. The punishment may or it may not characterize the infamous crime. The presence or absence of this quality of moral turpitude always will characterize it. The objection of indefiniteness in this rule and consequent difficulty on the part of the trial court in its enforcement, is not a serious objection. It merely compels a ruling based upon principle, a process which the trial court customarily follows.

As we have seen, crimes whose punishment must be imprisonment in the State prison are regarded by us as necessarily infamous. And we hold that crimes whose penalty may be imprisonment in the State prison, will be held to be infamous when the nature of the crime involves moral turpitude; crimes whose penalty must be in the county jail will be infamous when the nature of the crime involves moral turpitude and the penalty may be six months or more.

Undoubtedly this limitation will exclude some crimes whose nature does involve moral turpitude, but we think the lesser crimes which do involve moral turpitude have with us never been regarded as infamous crimes.

In *State* v. *Setter*, 57 Conn. 461, 467, 18 Atl. 782, we point out that larceny of property of small value is not a felony in this State, although a felony at common law. And it is equally certain that it is not an infamous crime in this State. The same could be asserted with other crimes whose criminality is regarded as minor in character although sharing the taint of having originated in moral turpitude. Many of these crimes are first offenses, and although they do involve moral turpitude, the serious consequences which follow the infamous crime should not be visited upon the offender for the first time. Public policy dictates a rule excluding offenses minor in character from the consequences attendant upon conviction of an infamous offense. And we adopt the rule excluding from the list of infamous crimes all crimes whose maximum penalty may be six months in the county jail. This line of division between those which are infamous crimes and those which are not, accords with the public opinion and the legal understanding existing in this State.

The record of conviction for statutory burglary was admissible as affecting the credibility of the witness, since statutory burglary is an infamous crime. An ingredient of this crime is the intent to commit larceny. Moral turpitude is involved in this crime. *Alfele* v. *Wright*, 17 Ohio St. 238; *Matter of Coffey*, 123 Cal. 522, 523, 56 Pac. 448.

There is no error.

In this opinion the other judges concurred.