## UNITED STATES ex rel. GRIFFO v. McCANDLESS.

District Court, E. D. Pennsylvania. September 28, 1928.

No. M–137.

Adrian Bonnelly, of Philadelphia, Pa., for relator.

George W. Coles, U. S. Atty., and Howard Benton Lewis, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The conclusion reached is that the relator be discharged without day. The question here is wholly one of power. We do not go (beyond the record of conviction) into the vexing question of what kind of an act evidences "moral turpitude," further than to note that the public authorities have passed upon the character of this alien's conduct, and we would see no need to review their judgment. Assuming the alien here has been guilty of conduct evidencing such moral turpitude as would (if the power exists) justify a sentence of deportation, the question recurs: Have the immigration officials the lawful power to deport him? If they have, we see no justification for interference; if the power has not been conferred upon them, they cannot be permitted to use it.

We may premise that the question is not affected by the situation of the alien. It is urged upon us that this relator, with all the "moral turpitude" which can be heaped upon his head, is an American, not a foreign, product. He was brought to this country when 2 years of age. He is now 28 and during his whole life, since he came to the United States, he has resided here. All the members of the family of his parents reside here, and his nine brothers and sisters are citizens. He married here a native-born citizen. No one would be disposed to view a sentence of deportation as a light matter. He had been tried and sentenced for the offense of aggravated assault and battery. As the term of his sentence was about to expire, these deportation proceedings were taken. He is in consequence to suffer a double punishment for his crime.

The act of Congress does not, however, discriminate between aliens on the ground of the length of time they have been in this country; nor between those whose relatives live here and those whose relatives live abroad; nor between the married and the unmarried. The power to deport applies to all alike in these respects. Congress has not discriminated, and it is clear the courts cannot.

The real question, we repeat, is wholly one of power. Section 19 of the Act of February 5, 1917 (8 USCA § 155), grants it, if it is possessed. This act confers it, if the alien is sentenced to more than one year's imprisonment for a crime "involving moral turpitude." This relator served a term of imprisonment of more than one year for burglary. He would be, in consequence, clearly within the act, except for the further provision that the crime must have been committed "within five years" after the alien came to this country. The burglary charge alone will thus not warrant deportation.

The act of Congress, however, adds another class of deportable aliens. Those may be deported who are sentenced more than once (to a year's imprisonment) "on conviction of any crime involving moral turpitude committed at any time after entry." What-

ever meaning may be given to this language, it at least means that each of at least two of the crimes must have been visited with the named length of term of imprisonment, and must have been a crime to which the phrase "involving moral turpitude" fitly applies.

It may be interpolated here that the diligence of counsel for the United States has been rewarded by the finding that the relator had also been convicted and sentenced for larceny; but as we have not been informed as to the term of imprisonment to which he was sentenced, and as this is not given as a ground for the order of deportation, we pass the fact as one introduced to give color to the cause. The question is thus narrowed to that of whether "aggravated assault and battery" implies the moral turpitude of the relator within the meaning of the act of Congress. In choosing the quoted phrase, the draftsman of the act may have had in mind the old distinction between acts mala in se and those which were merely mala prohibita, a distinction which has been repudiated as ethically unsound. He may, however, have had in mind those acts which are not only condemned by the law and denounced as criminal, but those which the extralegal moral sense pronounces to evidence moral turpitude or depravity. There is agreement that the latter is meant.

If the question were that propounded by the learned district attorney, to wit, whether the commission of burglary, larceny, and aggravated assault and battery, following each other in quick succession, evidences moral depravity according to the standards which prevail in the circles in which he moves, the answer would be within easy reach. That is, however, not the question. It is the narrower one of whether the commission of the act of aggravated assault and battery carries with it the conviction, also, of moral depravity. Burglary undoubtedly does. Assault and battery may or may not. It is easily conceivable that the law may condemn it, when the judgment of good men may unhesitatingly excuse or sometimes applaud it. To give any other meaning to the act of Congress than that thus indicated would require every case to be tried over.

Three things must appear from the record. There must have been (1) a conviction; (2) the offense must have been of such gravity as to have called forth a sentence of a year's imprisonment; and (3) it must be one which in itself evidences "moral turpitude." Here the third element does not appear until extraneous evidence is produced. The moment it is presented, we have at once a controversy, which can be silenced only by applying the principle that the judgment is conclusive. We must apply it, but in doing so we shut out all evidence other than the record. Had Congress meant that the "moral turpitude involved" should, aside from the nature of the crime charged, be presumed from the judgment of conviction and the imposition of the named sentence, there was no need to add the phrase. Not to provoke controversy, but to present a question wholly moot, deportation proceedings might be based upon a conviction and year's sentence for the declared offense of the purchase and possession of liquor above the permitted alcoholic content. If such were denounced as a crime, could, under a like act of Congress, an alien be deported?

The construction we put upon the act is that the moral turpitude must be inherent in the charge, and thus be evidenced by the record. We further rule that it is not conclusively implied in the charge of aggravated assault and battery. The moment we go beyond this construction of the act, we encounter differences evidenced by the cited cases and make of law an uncertain thing. Among the ruled cases cited to us are: U. S. v. Smith (D. C.) 8 F.(2d) 663; Weedin v. Yamada (C. C. A.) 4 F.(2d) 455; U. S. v. Curran (C. C. A.) 8 F.(2d) 355; U. S. v. Uhl (C. C. A.) 210 F. 860; Drazen v. New Haven, 95 Conn. 500, 111 A. 861; Ex parte Saraceno (C. C.) 182 F. 955; U. S. v. Williams (D. C.) 204 F. 828; U. S. v. Curran (C. C. A.) 4 F.(2d) 356.

An order discharging relator without day may be submitted.