Heating Acceptance Corporation *v.*
Hullie M. Patterson

King, C. J., Murphy, Alcorn, Comley and Shannon, Js.

Argued February 2—decided March 4, 1965

*John J. Hunt,* for the appellant (defendant).

*Herbert Watstein,* with whom was *Julius Watstein,* for the appellee (plaintiff).

KING, C. J.   The plaintiff sued as the endorsee of a promissory note given by the defendant to the payee, Holland Furnace Company, hereinafter referred to as Holland, in payment for a furnace purchased from it and installed in the defendant's six-family dwelling house in Bridgeport. The note was executed and delivered to Holland's agent in Bridgeport on or about November 12, 1958, but was made payable at Holland's home office in Holland, Michigan. On or before December 30, 1958, the note was endorsed and negotiated by Holland to the plaintiff, apparently in Michigan. The defendant claimed, in effect, that the furnace was defective and improperly installed by Holland; that she knew nothing about the note and signed it as a result of fraud in the factum on the part of Holland; and that the plaintiff was not a holder in due course.  From a verdict for the plaintiff the defendant has appealed.

We first consider an assignment of error directed to five rulings on evidence, since these are dispositive of the appeal adversely to the plaintiff. The five rulings were improperly combined in a single paragraph of the finding.   Practice Book § 648.

The defendant, on cross-examination, was asked whether, in 1959, she had been convicted on March 28 of the crime of keeping liquor with intent to sell, and on August 29 of the crime of selling liquor without a permit; whether, in 1960, she had been convicted on May 20 of the crime of selling liquor without a permit, and on August 28 of the crime of keeping liquor with intent to sell; and whether, on December 2, 1961, she had been convicted of the crime of keeping liquor with intent to sell. Each of the five questions was admitted over the defendant's objection, the court holding that the convictions were admissible under the provisions of § 52-145 of the General Statutes, which provides, in relevant part, that "[n]o person shall be disqualified as a witness in any action by reason of his . . . conviction of crime; but such . . . conviction may be shown for the purpose of affecting his credit."

Convictions of all crimes, however, are not admissible under this statute. In the case of *Drazen* v. *New Haven Taxicab Co.*, 95 Conn. 500, 508, 111 A. 861, this court divided into the following three categories the types of crimes, convictions of which were admissible: (1) crimes whose punishment must be imprisonment in the state prison; (2) crimes whose punishment may be imprisonment in the state prison if the crime involves moral turpitude; and (3) crimes whose punishment must be in the county jail and may be for more than six months and which involve moral turpitude.

Any uncertainty in our older cases as to the right to inquire concerning a conviction of a crime admissible under § 52-145, on cross-examination, as an alternative procedure to offering a record of the conviction, was set at rest in *State* v. *English,* 132 Conn. 573, 581, 46 A.2d 121.

The defendant was asked concerning five convictions, three of which were for keeping liquor with intent to sell, and two were for selling liquor without a permit. While the precise statutes violated were not given, both crimes appear to be violations of § 30-77 of the General Statutes and punishable under § 30-113 by a fine of not more than one thousand dollars, or imprisonment for not more than one year or both. Since the imprisonment could not be for more than one year, it could not be in the state prison. General Statutes §§ 54-120, 54-121; *Leifert* v. *Turkington,* 115 Conn. 600, 602, 162 A. 842. Because of this, neither crime could come within either of the two higher categories listed in *Drazen* v. *New Haven Taxicab Co.,* supra. The crimes in question could not fall in the third or lowest category listed in the *Drazen* case since punishment by imprisonment in jail is not required even though, if imposed, it could exceed six months. *Kurtz* v. *Farrington,* 104 Conn. 257, 262, 132 A. 540. It was error to admit the questions under § 52-145. The court based its ruling on the fact that it considered the convictions to be for crimes involving moral turpitude. Moral turpitude is an additional prerequisite to the admissibility of a conviction of a crime falling within the two lower categories. But since the punishment provided did not bring either crime into any one of the three categories, the convictions were inadmissible regardless of any question of moral turpitude.

The difficulty encountered by trial judges in ruling on the admissibility, under § 52-145, of proof of convictions in the two lower categories established by the *Drazen* case, where the presence or absence of moral turpitude must be determined, has proven to be not inconsiderable, especially in the case of

mala prohibita. The uncertainty in the meaning and application of the phrase "moral turpitude" is well brought out in *Drazen* v. *New Haven Taxicab Co.,* supra, 506-508. See also, as to cross-examination of an accused to prove prior convictions, an annotation in 161 A.L.R. 233, 253, and earlier annotations referred to therein. All this has led us to a reexamination of our rule as promulgated in the *Drazen* case and is strongly persuasive of the fact that a definite rule, of certain application, would eliminate problems and difficulties at the trial level, on the part of both court and counsel, which in turn lead to mistakes and costly appellate procedure, if not to actual injustice. When the *Drazen* case was decided there was no clear test of a felony except perhaps that it included crimes for which the punishment had to be death or imprisonment in the state prison. *Drazen* v. *New Haven Taxicab Co.,* supra, 504; *State* v. *Setter,* 57 Conn. 461, 466, 18 A. 782. Subsequently much of this uncertainty was eliminated by the enactment of a statutory definition of a felony (Sup. 1943, § 752g) which is now included in § 1-1 of the General Statutes. This statute provides that "[a]ny crime punishable by death or imprisonment for more than one year shall be deemed a felony, and any other crime, unless designated a felony by statute, shall be deemed a misdemeanor." Some crimes may from time to time be arbitrarily designated as felonies in a particular statute, although they carry a maximum permissible penalty of less than imprisonment for more than one year.[1] For this reason, even under the

---

[1] Thus, General Statutes § 53-304, prior to its amendment by Public Acts 1963, No. 497, designated as a felony the crime of nonsupport, although the maximum permissible punishment was imprisonment for not more than one year.

foregoing statutory definition, the word "felony" still lacks the certainty desirable as a test of crimes, convictions of which are admissible under the statute. We therefore hold that a conviction of a crime, whether or not the crime is denominated a felony, is admissible under § 52-145, only if the maximum permissible penalty for the crime may be imprisonment for more than one year, and we further hold that the presence or absence of moral turpitude is not a consideration in the admissibility of the proof of a conviction under that statute.

Some claim seems to have been made that the fact of conviction was, in this case, admissible to prove that the defendant had done the act constituting the crime for which she had been convicted. That is, the plaintiff claims the convictions of the defendant were admissible to contradict her testimony that she sold nothing but food, sandwiches, coffee and soda in her restaurant. This is not the law. "As a general rule, judgments in criminal cases are not admissible in civil proceedings to prove the acts charged." *Page* v. *Phelps,* 108 Conn. 572, 588, 143 A. 890, citing *McKenna* v. *Whipple,* 97 Conn. 695, 701, 118 A. 40. There is nothing to indicate that the plaintiff pleaded guilty so as to make the plea admissible as an admission. *Graham* v. *Wilkins,* 145 Conn. 34, 40, 138 A.2d 705.

The record also indicated that the statutory rule was confused with the rule permitting cross-examination, within the discretion of the court, as to specific acts of misconduct indicating a lack of veracity. *Martyn* v. *Donlin,* 151 Conn. 402, 408, 198 A.2d 700; *Vogel* v. *Sylvester,* 148 Conn. 666, 675, 174 A.2d 122. The two methods of cross-examination are wholly dissimilar. *Shailer* v. *Bullock,* 78 Conn. 65, 69, 61 A. 65. It is clear that

the admission of these questions was probably harmful, and that it was erroneous under the *Drazen* rule as well as under the modification of it which we have adopted in this case. A new trial is, therefore, required.

Since this is so, we briefly note certain of the other errors claimed involving questions likely to arise on a retrial.[2] The defendant offered evidence to prove that she signed the note in question in reliance upon the representation of the seller that it was a credit application. Since there was abundant, although controverted, evidence that the plaintiff finance company was a holder in due course, it became important to determine whether the facts testified to by the defendant, if credited, would constitute fraud in the factum, available against a holder in due course, or merely fraud in the inducement, not so available. Our cases seem not to have clearly explained the difference between fraud in the factum and fraud in the inducement. A rather well-drafted explanation of the distinction, in a charge to the jury, was not approved, although not in terms disapproved, in *Rowland* v. *Fowler*, 47 Conn. 347, 348. Fraud in the inducement, although not clearly so designated, appears to have been in the court's mind in *Ross* v. *Webster*, 63 Conn. 64, 67, 26 A. 476. Clarification of our law is needed. It

---

[2] In Connecticut, the Negotiable Instruments Law, General Statutes, Rev. 1958, chapter 695, was in effect until October 1, 1961, when it was superseded by the Uniform Commercial Code. Public Acts 1959, No. 133, § 10-101 (General Statutes § 42a-10-101); Public Acts 1959, No. 615, § 28 (included in General Statutes § 42a-10-102). As far as appears, the questions presented in this appeal with respect to the promissory note are governed by the Negotiable Instruments Law and not by the Uniform Commercial Code. This must be borne in mind in considering this opinion as an authority in subsequent cases governed by the Uniform Commercial Code. See, for instance, General Statutes § 42a-1-105 as to the choice of law rule.

seems best to adopt as a common-law definition of fraud in the factum, for use under the Negotiable Instruments Law, which contains no definition, the codification of the common-law definition in the Uniform Commercial Code, General Statutes § 42a-3-305 (2) (c), which is: "[S]uch misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." The defendant was entitled to a charge defining fraud in the factum together with its application to her claims of proof. Nothing along this line was given, although such a charge was requested. See 19 Connecticut General Statutes, Annotated (West Ed.), p. 510, comment (7).

Throughout the case, there seems to have been uncertainty as to whether the governing law was that of Connecticut or that of Michigan. The note, although executed and delivered to Holland's agent in Connecticut, was by its terms made payable in Michigan and apparently was there negotiated to the plaintiff. "[T]he law of the place of contracting determines what are the obligations of . . . a mercantile instrument". Restatement, Conflict of Laws § 346. Thus, the law of Connecticut, where the note was executed and delivered, would determine whether there was fraud in the factum, fraud in the inducement, or no fraud at all.[3] See *Downer v. Chesebrough,* 36 Conn. 39, 43; Restatement, op. cit. § 347; 2 Beale, Conflict of Laws §§ 346.3, 347.1.

"The validity and effect of the transfer of a negotiable instrument are determined by the law

[3] The rule as to choice of law in cases where usury is claimed is set forth in cases such as *Santoro* v. *Osman,* 149 Conn. 9, 11, 174 A.2d 800, and *Pioneer Credit Corporation* v. *Radding,* 149 Conn. 157, 159, 176 A.2d 560.

of the place where the instrument is at the time of its transfer." Restatement, op. cit. § 349, and comments (a) and (c); see also *Downer* v. *Chesebrough, supra.* Thus, the determination as to whether or not the plaintiff was a holder in due course and his rights in the light of that determination would be governed by the law of Michigan, including any applicable statutory provisions. It is important to point out, however, that the court need not take judicial notice of the law of a foreign jurisdiction, whether common law or statutory, under General Statutes §§ 51-32, 52-163 and 52-164, unless authoritative sources of the foreign law, subject to inspection or verification by opposing counsel, are made available to the court by reference or otherwise, under the usual rules for judicial notice as outlined in cases such as *Nichols* v. *Nichols,* 126 Conn. 614, 622, 13 A.2d 591, *State ex rel. Capurso* v. *Flis,* 144 Conn. 473, 477, 133 A.2d 901, and *Guerriero* v. *Galasso,* 144 Conn. 600, 605, 136 A.2d 497. See also *Stenz* v. *Sandstrom,* 143 Conn. 72, 76, 118 A.2d 900.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion MURPHY, COMLEY and SHANNON, Js., concurred; ALCORN, J., concurred in the result.