## GEO. M. UPSHUR, JNO. T. MORRIS AND EDWARD H. FOWLER, BOARD OF POLICE COMMISSIONERS, *vs.* BERNARD J. WARD.

*Police Force of Baltimore City—A de Facto Officer on the Force When Act of 1900, ch. 425, Was Passed Cannot be Removed on Ground of Irregularity of Appointment.*

The Acts of 1900, ch. 16 and ch. 425, regulating the police force in Baltimore City provide that all appointments to, and promotions in, that force shall be made by the Police Commissioners from graded lists furnished to them by the Board of Examiners; that all police officers other than surgeons, etc., shall be retained on the force during good behavior and may be removed only after written charges and a trial, and it is also provided that these Acts should not be construed to legislate out of office any police officer then on the force. In 1897, the petitioner in this case was appointed a Captain of Police and continued to act as such until September 13th, 1901, when he was removed by the Board of Police Commissioners, without charges, and upon the ground that his original appointment was void because he was then ineligible and because one of the Commissioners voting for him had sent in his vote by mail. Upon a petition for a *mandamus* to compel his restoration to the office of captain of the permanent police force. *Held*, that whether the original appointment of the petitioner was irregular or not, he was at all events a *de facto* officer, and under the Acts of 1900, being then on the force, he was entitled to retain the office and was protected from removal except upon charges and a trial, and that consequently the writ of *mandamus* asked for should be issued.

Appeal from an order of the Superior Court of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alonzo L. Miles,* for the appellants.

*Roger W. Cull,* (with whom was *Edgar H. Gans* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The appellants are Messrs. Upshur, Morris and Fowler, who constitute the Board of Police Commissioners of Baltimore City, and the appellee is Bernard J. Ward. The latter filed a petition in the Superior Court asking for a writ of *mandamus* to issue against the former to restore him "to the office of captain of the permanent police force" of that city. The board filed an answer to this petition on which answer the plaintiff in part joined issue and to which it in part demurred. The case was tried before the Court without a jury, and after disposing of the various propositions of law which were submitted by both plaintiff and defendant, an order was passed directing that the writ of *mandamus* should issue as prayed. From this order the Board of Police Commissioners, the defendants below, have appealed.

We deem it unnecessary to discuss the various rulings of the Court below, or to consider the many interesting questions argued at bar, for in our opinion there is one controlling question the solution of which will entirely dispose of this case. That question is as to the effect upon this controversy of the Acts of 1900, chapters 16 and 425. In order to consider this question we will briefly state a few of the conceded facts of the case. The plaintiff was appointed as Captain of Police on July 12th, 1897. At the meeting of the board at which this appointment was made there were only two of three members present constituting the board, the remaining member, Commissioner Heddinger, being absent from the State. At this meeting, however, a letter from the absent member was produced by which he undertook to vote for the appointment of the plaintiff, and it was in this way that he was elected. He continued to act as Captain of Police until the 13th September, 1901, when he was removed from that position by the

board for the reasons set forth in certain resolutions passed on that day. It is sufficient to say that the reasons given in these resolutions for the action of the board in dismissing the plaintiff from the force are, first, that at the meeting at which he was appointed there were only two members of the board present; one of whom voted for and the other against the appointment of the plaintiff, and that the appointment was, therefore, in fact made upon the vote *by mail* of Mr. Heddinger who was then out of the State; and, secondly, that at the time of his appointment the plaintiff was ineligible for the position of captain under the rules of the department; and thirdly, that it, therefore, followed that the plaintiff was an officer *de facto* merely, performing the duties of captain without having been permanently appointed to that office in accordance with law. For these reasons, the plaintiff was, as we have said, removed on the 13th September, 1901—not upon any written charges, but because in the opinion of the board he had never been regularly or legally appointed.

While we will not, as we have said, consider the question here presented as to the validity or legality of the appointment of the plaintiff we do not wish our silence upon that question to be construed as a tacit approval by this Court of the method adopted by the board in this particular case.

Assuming therefore without so deciding that the appointment of the plaintiff as Captain of the Police Force of Baltimore City was illegal, in the sense that he was not duly appointed in accordance with provisions and requirements of the laws passed by the Legislature to control the Board of Police Commissioners in the selection of the officers and men who compose the force, and that his reappointment on 19th July, 1901, was also irregular for the same reasons that this original appointment was invalid, we will briefly consider the provisions of the leglation of 1900.

It is apparent from the face of these Acts, and it is a matter of general knowledge, that the object of the Legislature was to free the men and officers of the police force of Baltimore City from any arbitrary interference on the part of the Board

of Police Commissioners.   Hence by chapter 16, a Board of
Examiners was created which among other things was required
"to ascertain the qualifications by competitive examination of
every candidate for appointment to or promotion in the police
force created and organized under existing law for the city of
Baltimore, except the Marshall of Police, captain of detectives,
counsel and police surgeons, and to report to the Board of
Police Commissioners   *   *   graded lists of those persons
whom they may deem qualified for such appointment or pro-
motion, from which graded lists all nominations for appoint-
ments to or promotion in said force shall hereafter be made by
said Board of Police Commissioners."   By this same Act it
is provided (745 F.) that all police officers, etc., other than
counsel and police surgeons   *   *   "shall be retained on the
force during good behavior   *   *   *   and may be removed
*   *   *   only after written charges   *   *   and trial had
before the board   *   *   after reasonable notice."   By chap.
425 power is given to the board "to enroll and employ a per-
manent police force for the city of Baltimore," with power to
remove officers and men under the provisions of chap. 16.  The
Legislature then provides what the force shall consist of, and
for compensation and then declares that nothing in the Act
(chap. 425) shall be construed in any manner to change or
alter "the method of making appointments to, promotions in
or removals from the police force as prescribed by chapter 16
*   *   but said police force shall be regulated and managed
in all respects in accordance with said chapter 16;" and fur-
ther that nothing contained in chap. 425 shall be construed to
legislate out of office any police officer, detective or officer of
police *now on the force*"   *   *   *

The question presented, therefore, is an extremely narrow
one, and involves only the construction of the language used
in the chapter 425 of the Acts of 1900 to the effect that offi-
cers and men *on the force when that Act was passed* are not to
be considered as legislated out of office by any of the provis-
ions thereof.   In other words our construction of the Act is
that inasmuch as "a permanent police force" was provided for,

and all power to interfere by removal, except on written charges and as provided by law, had been taken from the Board of Police Commissioners, neither they nor any other power should have any excuse for contending that any officer should be dismissed by reason of any supposed technical flaw in his title to his office. The whole object of the legislation it is conceded is to provide Baltimore City with the best possible police force, and hence officers and men as well, who like the plaintiff are conceded to be innocent of any infraction of the rules of the department or any violation of law, were to be retained if they were on the force when the Act was passed. That the Legislature had the power to pass such a law is not and cannot be denied. But again the provision is general and sweeping. The law is not to affect any particular class of officers but any person "now on the force." It is conceded by the defendants that the plaintiff was, at least, a *de facto* officer, and it would seem but reasonable to conclude that all officers are included, *de facto* as well as *de jure*, within the general words used in the Act. And especially is this conclusion to be adopted, because as we have said, the object was to deprive the board of the power of arbitrary removal, and restrict them to the procedure prescribed by chapter 16, to wit—removal only after written charges, notice and trial.

The appellant relied upon the case of *People, &c., ex rel. Kopp* v. *French et al.*, 102 N. Y. 583, to sustain the position that it was the intention of our Legislature to protect only officers *de jure* by the language used in chap. 425. But we do not think the case cited controls the question we have before us here. There the Police Commissioners of the city of New York summoned before them the plaintiff who was a police officer or patrolman and informed him of the charges against him, namely, that before he had been appointed he had been convicted of a crime and that the law provided that "no person shall ever be appointed to membership in the police force * * or be appointed a patrolman who shall have been" so convicted. His counsel appeared with him before the board and admitted that the plaintiff had been *tried* and

*convicted* of being intoxicated in a public place, but he was dismissed. It was contended that this action was illegal, first, because the law provided that no member of the police force "shall be * * * dismissed * * until written charges shall have been made or preferred against him" and second, that the offense of which he was convicted was not a crime. It was held that intoxication was a crime within the meaning of the law regulating the appointment of patrolman and that, therefore, the plaintiff was not *legally* a member of the police force; that the Police Commissioners had no right, under the statute, to appoint him, and that when it came to their knowledge he had been convicted of a "crime" they had a right summarily to discharge him without preferring written charges subject, of course, to his right, if any error was committed, to apply for *mandamus* for restoration. It was also held that independent of this view, the plaintiff could not complain of the absence of written charges because he had waived the presentation of such charges by appearing and going to trial on the merits. But all this is beside the question before us. We concede for the purpose of the argument that the plaintiff here was not legally in office, but our view is that by the Act of 1900, ch. 425, even if he was not an officer *de jure*, yet, if he was acting as an officer *de facto* his title was made good by the Leglslature and he can only be removed as provided by the Act of 1900, ch. 16.

For the reason we have given the order appealed from should be affirmed.

*Order affirmed with costs.*

(Decided April 1st, 1902.)