THE CITY OF NORWALK *vs.* THE NORWALK INVEST-
MENT COMPANY.

Third Judicial District, Bridgeport, April Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Orderly practice requires that the jurisdictional facts recited in an
application for the appointment of a committee in condemnation
proceedings should be found and so appear of record, either in the
order of appointment or in the judgment upon the report.
Unless a decree of foreclosure contains a provision for vesting the title
in a subsequent incumbrancer who redeems, as it may under § 5202
of the General Statutes, the redemptioner does not acquire an
absolute title under a quitclaim deed from the mortgagee, but
only such title as the mortgagee himself had by virtue of his mort-
gage and the foreclosure decree.
The town of Norwalk—afterward consolidated with the city of Nor-
walk—was authorized in 1911 (16 Special Laws, p. 490) to con-
struct a bridge over the Norwalk River, to lay out a park adjoining
it, and to acquire by gift, purchase, or condemnation proceedings,
the land necessary therefor; and this Act was approved and ac-
cepted by the City September 11th, 1911. Upon an appeal from
a judgment rendered on the report of a committee to assess damages
in condemnation proceedings, it was *held:*—
1. That the committee and the trial court were in error in ruling that
the Special Act and its approval by the City was in itself a taking
of the defendant's land for public use, and therefore that interest
upon its value ran in favor of the property-owner from September
11th, 1911.

(1)

2. That until the commencement, at least, of condemnation proceedings by the City, there could be no constitutional taking of the defendant's land for a public use.

3. That interest could not in fairness be charged against the City, inasmuch as the defendant had remained in possession of the premises under a claim of right and thus had received the value of the use.

4. That § 9 of the Act declaring that "said park is hereby established and laid out with the boundaries herein described," merely determined the public use and necessity of the park as established and laid out in the Act, provided the City should see fit to institute condemnation proceedings to acquire title.

5. That the City was not liable for the value of a house which had been removed from the land before commencement of the condemnation proceedings.

In 1913 an amendment of this Act (16 Special Laws, p. 756) authorized the Town to take possession of the land required for the park after the acceptance of the appraisal and the deposit of the amount thereof with the clerk of the court. *Held* that this evinced the intent of the legislature that title might pass at the time of such acceptance and deposit but not sooner.

Argued April 14th—decided June 10th, 1920.

APPEAL by the plaintiff, in condemnation proceedings, from a judgment of the Superior Court in Fairfield County, *Webb, J.*, rendered upon the acceptance of a committee's report, awarding $10,390 to the defendant for the taking of its land for a public park. *Error: judgment to be rendered in conformity with the opinion.*

*John H. Light*, for the appellant (plaintiff).

*Adelbert A. Skeel*, for the appellee (defendant).

WHEELER, J.   This appeal is from the judgment accepting the report of a committee, named to ascertain the interest of the defendant, the Norwalk Investment Company, in the premises described in the application for the appointment of the committee, and to estimate and assess to it the damage sustained by it by reason of the establishment of a park pursuant to a

Special Act (16 Special Laws, p. 490), and for the taking of the interest of the Company in the premises.

We pointed out in *Norwalk* v. *Podmore,* 86 Conn. 658, 660, 86 Atl. 582, that the jurisdictional facts recited in the application should appear as found, either in the judgment or order of appointment, or in the judgment upon the report. They do not so appear in this case except inferentially in the "Memorandum on Application to Appoint Committee to Assess Damages." We shall consider these facts as a part of the record, since the parties have so treated them. Orderly practice requires that the method pointed out in *Norwalk* v. *Podmore, supra,* should be followed by counsel and required by the trial court.

The Act empowered the town of Norwalk to construct a drawbridge, with approaches thereto, over Norwalk River in place of an existing bridge, and to acquire and own the land therefor; also to establish, layout, improve, and maintain a park, and to acquire and own the land therefor as described in the Act and adjoining the bridge and its approaches. It provided that in case the town could not agree with the owners of land or buildings within the limits of the park, the town might proceed to condemn the land or buildings within the park in accordance with the provisions of the statutes relating to the condemnation of land for highway purposes. The town of Norwalk duly ratified and approved of this Special Act on September 11th, 1911.

The town could not agree with the defendant Company, which claimed to own an interest in land within the park. Thereupon *Judge Curtis* duly appointed three disinterested electors as a committee to ascertain the interest of the defendant in the land described in the application, and to estimate and assess the damages sustained by it by reason of the establishment of the

park and the taking of the land. In its report to the court, the committee found the facts as follows: On September 11th, 1911, the defendant owned two tracts of land in Norwalk, one known as the Aisthorpe piece, the other as the Betts piece. The Aisthorpe piece was on April 5th, 1907, subject to a mortgage to the Fairfield County Savings Bank for $1,600, and so continued unless paid as hereinafter set forth. On February 11th, 1913, one McKendry and wife filed a judgment lien for $404.03 against this tract as the property of the defendant. The Fairfield County Savings Bank brought its action to foreclose its mortgage to the first Tuesday of October, 1913, in which the defendant McKendry and wife and the City of Norwalk were made parties. A decree of foreclosure was rendered in which the law days were fixed, for the defendant Investment Company the first Monday of February, 1914, the Tuesday following for the City of Norwalk, the Wednesday following for McKendry, and the Thursday following for his wife, Carrie E. The decree of foreclosure did not contain a provision in accordance with General Statutes, § 5202.

On December 8th, 1913, one Hoyt, a stockholder in defendant, paid McKendry and wife the amount due upon their judgment lien for the protection of the interest of the Norwalk Investment Company. That Company failed to redeem said mortgage, and on the first Tuesday of February, 1914, the city of Norwalk paid the bank the face of its decree and received a quitclaim deed from the bank of its interest in the premises by virtue of the mortgage and decree of foreclosure.

On September 11th, 1911, the Norwalk Investment Company executed to one Wellnitz a mortgage for $1,500 on the Betts tract, which is now held by the South Norwalk Trust Company as collateral security

under an assignment. The Aisthorpe piece was on September 11th, 1911, and on the date of the report, of the value of $5,400, and the Betts piece was on this day, and on the date of the report, of the value of $5,000. The town of Norwalk having failed to reach an agreement with the Norwalk Investment Company as to the value of these two tracts, took no action until compelled by mandamus to institute this action. Subsequent to September 11th, 1911, and prior to this action, the dwelling-house standing upon the Aisthorpe piece was removed without the knowledge or consent of defendant Company.

The committee held (1) that the defendant Company's two tracts were included within the limits of the park as laid out and established by the Special Act, and were appropriated to the public use by the terms of the Act and the approval of the plaintiff, and that the title to these two pieces vested in the town of Norwalk on September 11th, 1911; (2) that the foreclosure proceedings instituted by the Savings Bank were without legal effect upon the title to the premises, and that the payment of the mortgage indebtedness to the bank amounted only to the payment by the City of the interest of the bank; (3) that the claimed McKendry lien was not a valid lien, since the title had before this time passed from the Company to the city of Norwalk; (4) that the damages assessed to the Company by reason of the layout of said park were $10,400, with interest from September 11th, 1911, and that this was made up of the items: value of house upon the Aisthorpe tract $1,400; Aisthorpe piece, including riparian rights, $4,000; and the Betts piece, including the riparian rights, $5,000.

The plaintiff claims that the basic error of the committee was in its ruling that the property of the defendant was appropriated to the public use by the Special

Act and that the title to this property vested in the town of Norwalk on the day it approved of the Act, September 11th, 1911, and as a consequence the assessment of the damages and the allowance of interest to the defendant ran from that date. As a further consequence of this ruling the committee ruled that the town should pay $1,400 for the house upon the Aisthorpe tract, although it had been removed from the Aisthorpe piece prior to this application but subsequent to September 11th, 1911. The allowance of interest from September 11th, 1911, and the value of the Aisthorpe house, $1,400, constitute the irregularities of which the plaintiff complains upon this appeal.

The committee's ruling depends upon the soundness of its position that the premises were taken at the time the Act was approved of by the town. Interest, under General Statutes, § 4797, is allowed as damages for the detention of money after it becomes payable. If the title vested at the time of the approval of the Act, interest certainly could not be allowed until the City had had a reasonable opportunity to have acquired the property, either by agreement or by condemnation; and since the defendant remained in possession of the property under a claim of right, the value of the use must in fairness be set against the interest allowed. *Bishop* v. *New Haven*, 82 Conn. 51, 57, 72 Atl. 646. These considerations must necessarily cause a reduction of the allowance for interest, perhaps its entire omission. But the error of the committee arises through a mistaken interpretation of the Act. The Special Act did not, as we read it, vest title to this property in the City upon its approval of the Act. Until acquisition of this property by purchase, voluntary or involuntary, title did not pass. If the Act purported to pass title before the town had acquired title by purchase or condemnation, this provision

would have been nugatory because in violation of
Article First, § 11, of our Constitution. Within the
meaning of the constitutional guaranty there could be
no taking before the condemnation proceedings herein.
*New Milford Water Co.* v. *Watson,* 75 Conn. 237, 250,
52 Atl. 947, 53 id. 57; *Roper* v. *New Britain,* 70 Conn.
459, 466, 39 Atl. 850; *Hawley* v. *Harrall,* 19 Conn. 142,
151. Property is taken when the owner is excluded
from the use and possession of his property and this
has passed, under the power of eminent domain, to
public authority and for the public use. *Woodruff* v.
*Catlin,* 54 Conn. 277, 297, 6 Atl. 849. The committee
relied for its ruling upon § 9 of the Act, which reads:
"Said bridge and park are hereby declared to be of
public use and necessity, . . . and the said park is
hereby established and laid out with the boundaries
herein described." We think the City interprets this
section correctly. Its purpose was to determine the
public use and necessity of the park as established and
laid out in the Act, in the event of condemnation
proceedings to acquire title. This section must be
read in connection with the rest of the Act. When
so read the legislative intent is plain. Section 1 au-
thorized the town of Norwalk (now consolidated with
the city of Norwalk) to establish, lay out, improve,
and maintain a park, and to acquire and own abso-
lutely the land therefor. Again, § 2 provides that the
town may acquire by gift, or by purchase by agreement,
any land or buildings, or rights partly matured therein,
within the limits of lands required for the park, and
when such lands or rights are so taken shall pay the
owners a reasonable sum therefor, and thereupon said
town shall own, absolutely, the land and buildings so
acquired, for the purposes of this Act; and in case the
town cannot agree with any owner, it may proceed to
condemn the land or buildings within the park in

accordance with the statutes relating to the condemnation of land for highway purposes. If the title passed by the Act, there was no occasion for express authority to acquire title by gift, purchase or condemnation. The language used is unambiguous, and it seems to us to make the legislative intent clear. This was to fix by the Act the boundaries of the proposed park, to determine its public use and necessity, and to provide for the acquisition of the land within the limits of the park by gift, purchase or condemnation. Section 5 emphasizes this construction of the Act by making certain designated persons a committee to be the sole agent of the town for acquiring the property and rights for the park. These provisions contemplate payment for the property taken; the legislature cannot be presumed to have intended to vest title without paying for it, and if it had so intended, it would have expressed its intent in plain and direct way. Instead of this the contrary appears.

In an amendment to this Act (16 Special Laws, p. 756) the town is authorized to take possession of land or buildings, or interest in land or buildings, or rights partly matured therein, within the limits of the park, after the report of appraisers appointed by the court pursuant to the provisions of the Act has been accepted by the court, provided the commission shall deposit with the clerk of the court the amount reported by the committee and accepted by the court for the owners. In accordance with this amendment the title passes after the report has been accepted and the amount of the appraisal deposited with the clerk of the court. The amendment evidently intends to hasten the date of the passing of title from the time of payment of the appraisal to the time of the acceptance of the appraisal by the court, regardless of the determination of the appeal provided by the Act.

It is not our purpose to pass upon the validity of this feature of the amendment. But it concerns us because it evinces the legislative intent as to when title shall pass. If the provisions of the Act are to be followed, interest upon the appraisal has not run, since the amount of the appraisal has not yet been deposited with the clerk of the court. When this Act was before us in *Norwalk* v. *Podmore*, 85 Conn. 498, 502, 83 Atl. 629, we recognized the necessity of acquiring title for the land within the layout of the park as established by the Act, for we said: "What remained to be done after the Act was passed, was to acquire title to the land within the layouts and to construct the contemplated works. . . . The acquiring title to the land was incidental to the other work, for the latter could not proceed until the land was acquired." Our construction of the Act accords with the understanding of the parties, which has always been that the possession and title of the property in question remained in the defendant.

The remonstrance alleged, and the demurrer thereto admitted, that on September 11th, 1911, the defendant was and ever since had been in the exclusive possession, use and enjoyment of the Betts and Aisthorpe pieces. While retaining its use, the defendant could not exact compensation for the deprivation of the value of the property. The demurrer to the remonstrance should have been overruled and the remonstrance sustained upon the first five grounds thereof. It would follow that interest should not be allowed from September 11th, 1911, and that the value of the house, $1,400, should be deducted from the appraisal made.

The City's claim that its title to the Aisthorpe piece is absolute by virtue of the foreclosure, is not well taken. All that it obtained was such interest as the Savings Bank had by virtue of its mortgage and judg-

ment of foreclosure. The McKendrys were parties to the foreclosure, given a law day, and, so far as appears, their interest, now held by Hoyt, is still existent.

There is error, the judgment is reversed and the Superior Court directed to overrule the demurrer and sustain the remonstrance upon its first five grounds and render judgment in accordance with the foregoing opinion.

In this opinion the other judges concurred.