*Baltimore City Police—Validation of Appointment.*

In Acts of 1922, ch. 507, making changes in the organization of the police department of Baltimore City, the provision that "nothing herein contained shall be construed to legislate out of office any police officer, detective or officer of police now on the force" had the effect of validating a previous appointment, illegally made, of one who was a *de facto* officer on the force at the time of the passage of the act.

*Decided January 17th, 1924.*

Appeal from the Circuit Court of Baltimore City (Dᴜꜰꜰʏ, J.).

Bill by Clarence Smith and J. Harry Green against Charles D. Gaither, Police Commissioner for Baltimore City, and Harry Ernest. From a decree for defendants, plaintiffs appeal. Affirmed.

The cause was argued before Bᴏʏᴅ, C. J., Tʜᴏᴍᴀs, Pᴀᴛᴛɪsᴏɴ, Uʀɴᴇʀ, Sᴛᴏᴄᴋʙʀɪᴅɢᴇ, Aᴅᴋɪɴs, and Oꜰꜰᴜᴛᴛ, JJ.

*Willis R. Jones,* with whom were *Harold Tschudi* and *Briscoe, Jones & Martin* on the brief, for the appellants.

*Allan H. Fisher, Assistant Attorney General,* with whom was *Alexander Armstrong, Attorney General,* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellants, tax payers of Baltimore City, filed their bill in this case asking that Charles D. Gaither, Police Commissioner of said city, one of the appellees, be restrained from paying unto the other appellee, Harry Ernest, a policeman of said city, out of the public fund created for the payment of the salaries of policemen, any compensation for the services rendered by him as policeman; and that said police commissioner be ordered and required by injunction to cause the name of Harry Ernest to be stricken from the pay roll of the police force of Baltimore City. The prayer of the bill was based upon the alleged fact that the appointment of Ernest, as policeman, was illegally made and that he, at the time of the filing of the bill, was not legally a member of the police force of Baltimore City, entitled to receive out of said fund compensation for services rendered by him as policeman, and if he were so paid, such payment would be a misapplication of said public funds.

Chapter 16 of the Acts of 1900, by which the Board of Police Examiners was created, provided, in section 745 D, that it was the duty of said board "to ascertain the qualifications by competitive examination of every candidate for appointment to * * * the police force, * * * except the marshal of police and captain of detectives, counsel and police surgeons, and to report to the Board of Police Commissioners * * * graded lists of those persons whom they may deem qualified for such appointment * * *, from which graded lists all nominations for appointment to * * * said police force shall hereafter be made by said Board of Police Commissioners. The said act also provides (section 745 E) that an applicant for appointment to said police force shall file with the Board of Police Examiners a formal application in writing in which he shall state under oath such information as may reasonably be required, touching the applicant's merit and fitness for service on said police force. In addition thereto, it provides that "the said Board of Police Examiners

shall refuse to examine an applicant, or after an examination to certify an eligible, who is found to lack any of the established preliminary requirements for the examination or position to which he applies; * * * or who is addicted to the habitual use of intoxicating beverages to excess; or who has been guilty of a crime or of infamous or notoriously disgraceful conduct; or who has been dismissed from the public service for delinquency or misconduct; or who has intentionally made a false statement of any material fact, or 'practiced, or attempted to practice, any deception or fraud in his application, in his examination, or in securing his eligibility or appointment."

The appellee, Ernest, made application for appointment on the police force on the first day of September, 1919, and was in November thereafter appointed on said force, at which time he was twenty-five years of age.

On July 20, 1922, the appellants preferred the following charges against him:

First: That the said Harry Ernest in his formal application for appointment to the police force of Baltimore City, under oath, knowingly and intentionally, attempted to practice and did practice deception in his said application relating to material facts, which conduct on the part of said Harry Ernest rendered him ineligible for membership on the police force of Baltimore City.

Second: That he committed an unjustifiable assault on them on February 4, 1922.

Upon the presentation of these charges, Charles D. Gaither, as Police Commissioner for Baltimore City, called for and obtained, from the Attorney General of the State, an opinion in which it was held that he, as Police Commissioner, was without authority to remove Ernest from the force upon the first of said charges brought against him—the other not having been submitted to the Attorney General for his opinion thereon—because of chapter 507 of the Acts of 1922, which was construed by him to validate the appointment of Ernest, if conceded to be illegal when made.

Upon the refusal of the Police Commissioner to remove Ernest upon the charges named, the appellants filed their bill on May 11th, 1923, in which they asked, not for his removal in express terms, but that he should not be paid for his services as policeman, out of the funds mentioned, and that his name be stricken from the payroll of the police force.

The contention of the appellants is that, in asking for such relief, they are not asking for the removal of Ernest from his office or position on the force, or that his title thereto is to be determined, for this could only be done in a court of law; but while they contend that such is not the purpose or object of their prayer, or its necessary effect if granted, the obtention of the relief sought depends absolutely upon Ernest's want of title to such office or position and, if their prayer were granted, the practical result thereof would be to deprive him of it.

The question whether a court of equity was the proper forum to pass upon the questions presented by the bill, and to grant the relief there sought, was with other questions raised by the appellees, but we do not feel called upon in this case to pass upon them, for should we concede, for the sake of argument, that the appointment of Ernest when made was illegal, it was thereafter, we think, validated by said Act of 1922.

In *Upshur* v. *Ward,* 94 Md. 778, Ward, the appellee, filed his petition in the Superior Court of Baltimore City, asking for a writ of mandamus to issue against the appellants, the Board of Police Commissioners, to restore him to the office of captain of police of that city, from which he had been removed by them on the 13th day of September, 1901.

At the time the appointment was made, the Board of Police Commissioners consisted of three members, and, at the meeting at which the appointment was made, only two of the three members were present, the other being absent from the State, but, though absent, he undertook to vote for the appointment of Ward, by letter from him, produced at the

meeting.   Ward assumed the duties of his office and acted as
captain under said appointment until July 19th, 1901, when
he was reappointed, and thereafter he continued to act as
policeman until removed by the board because of the alleged
illegality of his appointment.

The Court in that case, after assuming without deciding
that Ward was not legally appointed under the provisions
and requirements of chapter 16 of the Acts of 1900, held
that Ward's appointment was validated by chapter 425,
passed at the same session of the General Assembly of Mary-
land.

The Court, in its opinion in *Upshur* v. *Ward*, quoted fully
from section 745 D, of said chapter 16, which we have here-
inbefore set out, as well as from Section 745 F of said act,
in which it is provided that police officers, other than counsel
and surgeons, shall be retained on the force during good
behavior and shall be removed only after charges and trial
had before the board, after reasonable notice.   It then pro-
ceeds to say:

"By chap. 425 (of the Acts of 1900) power is given to the
board 'to enroll and employ a permanent police force for the
City of Baltimore,' with power to remove officers and men
under the provisions of chap. 16.   The Legislature then pro-
vides what the force shall consist of, and for compensation
and then declares that nothing in the Act (chap. 425) shall
be construed in any manner to change or alter 'the method
of making appointements to, promotions in or removals from
the police force as prescribed by chapter 16 * * * but said
police force shall be regulated and managed in all respects in
accordance with said chapter 16'; and further that nothing
contained in chap. 425 shall be construed to legislate out of
office any police officer, detective or officer of police *now on
the force.*

The question presented, therefore, is an extremely narrow
one, and involves only the construction of the language used
in the chapter 425 of the Acts of 1900 to the effect that officers

and men on the force when that Act was passed are not to be considered as legislated out of office by any of the provisions thereof. In other words, our construction of the Act is that inasmuch as 'a permanent police force' was provided for, and all power to interfere by removal, except on written charges and as provided by law, had been taken from the Board of Police Commissioners, neither they nor any other power should have any excuse for contending that any officer should be dismissed by reason of any supposed technical flaw in his titles to his office * * * That the Legislature had the power to pass such a law is not and cannot be denied. But again the provision is general and sweeping. The law is not to affect any particular class of officers but any person 'now on the force.' It is conceded by the defendants that the plaintiff was, at least, a *de facto* officer, and it would seem but reasonable to conclude that all officers are included, *de facto* as well as *de jure,* within the general words used in the Act."

While chapters 16 and 425 of the Acts of 1900 have several times been repealed and re-enacted with amendments, the last time in 1922, by said chapter 507, the amendments so made do not, we think, have any relation to the question here presented.

It is true, the appointment of Ernest, under chapter 16 of the Acts of 1900, was not made until after the passage of Chapter 425 of said legislative session, and of course, if illegal, it could not have been validated by chapter 425, previously passed, but after his appointment, chapter 425 as amended was repealed and re-enacted with amendments by chapter 507 of the Acts of 1922, in which was inserted the provision: "And provided further that nothing herein contained shall be construed to legislate out of office any police officer, detective or officer of police *now on the force,*" which is a practical repetition of the language found in the earlier Act of 1900, which in *Upshur* v. *Ward,* was held to validate the appointment of Ward, likewise made under chapter 16 of the Acts of 1900, and unless we repudiate the decision

of this Court in *Upshur* v. *Ward,* we do not see how we can escape the conclusion that the appointment of Ernest, if conceded to be illegal when made, was validated by the subsequent Act of 1922, chap. 507.

The counsel for appellants have attempted to distinguish this case from *Upshur* v. *Ward,* but when we consider the reasoning of that case upon which the Court rested its conclusion, and the fact that the clause to be construed in this case is in the same act, with amendments, in which the clause in that case appeared; and that the statute (chapter 16 of the Acts of 1900) in connection with which the clause then considered by the Court was so construed, is the statute in connection with which the same clause is here to be construed, we cannot give to the facts upon which this case is attempted to be distinguished from that case the force and effect sought to be given them by appellants' counsel.

We will, therefore, affirm the order or decree, appealed from, dismissing the bill.

*Decree affirmed, with costs to the appellees.*