BOARD OF DENTAL EXAMINERS *v.* CHARLES B. LAZZELL

[No. 50, January Term, 1937.]

*Decided April 9th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Charles T. LeViness, 3rd, Assistant Attorney General,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the appellants.

*Willis R. Jones,* with whom was *Joseph O. Buchoff* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order granting the writ of mandamus on the petition of Charles B. Lazzell, to compel the respondents, B. Lucien Brun, J. Stevenson Hopkins, Louis Rossman, T. L. McCarriar, Frank P. Haynes, and Arthur P. Dixon, constituting the Maryland State Board of Dental Examiners, to cancel its revocation of the license or certificate of registration, which had been revoked by the board December 26th, 1935, effective January 1st, 1936.

The petition states that the petitioner (appellee) graduated from the school of dentistry of the University of Maryland in the year 1926; that later in that year he passed the examination conducted by the then Board of Dental Examiners, a certificate of registration was issued

to him, and thereafter, until January 1st, 1936, he was engaged in the practice of his profession in this state; and on December 26th, 1935, he received a letter from the Board of Dental Examiners, advising him that it had revoked his license; that prior to that letter he had received a letter under date of April 13th, 1935, advising him that, at a meeting of the board held April 12th, 1935, under the authority of section 8 of the Maryland State Dental Law of 1933, ch. 564 (Code (Supp. 1935), art. 32, sec. 8), his license to practice dentistry had been canceled because of his "recent conviction of a crime involving moral turpitude," unless he show cause to the contrary, in writing, to the board on or before April 20th, 1935; that following the receipt of this letter of April 13th, 1935, he filed an answer in writing (a) that he had not been convicted of any crime involving "moral turpitude"; (b) that the offense of "indecent exposure" does not involve "moral turpitude"; and (c) that the circumstances under which petitioner pleaded guilty to the offense of "indecent exposure" did not involve "moral turpitude"; that a hearing was had on the charges before the board on December 3rd, 1935, at which the petitioner appeared in person and by attorney, at which he admitted that he had pleaded guilty to the offense of "indecent exposure," and he was so found; that he related the circumstances concerning the plea and conviction; that his testimony showed that "he had not committed the offense of 'indecent exposure' in any public place and that the circumstances which led to his plea of guilty and conviction were entirely accidental so far as * * * petitioner was concerned, and that no one would have seen or been able to see * * * petitioner exposed except by peeping through windows or open doors into the privacy of the office or home of * * * petitioner"; that his admission as stated was the only evidence at the hearing, and that it showed there was "no intent to commit the crime of 'indecent exposure.' "

The petitioner denied the authority of the dental board to revoke his license, because he had been licensed to

practice dentistry before the passage of the Act of 1933, ch. 564 (Code [Supp. 1935], art. 32), by section 11 of which it was provided that "nothing in this Article, or in any other provision of this Code, shall be so construed as to interfere with the rights and privileges of physicians and surgeons, * * * nor of persons holding certificates, duly issued to them by the State Board of Dental Examiners of Maryland prior to the passage of this Act."

The board filed a demurrer and answer to the petition. The order appealed from sustained the petitioner's demurrer to the answer, so there is no need to consider any of the grounds of the board's demurrer, except the sufficiency of the charge of "indecent exposure" as involving "moral turpitude," and the application of the Act of 1933, ch. 564. By way of answer the board either flatly admitted or denied the statements of fact and legal conclusions, and, as they are clearly enough stated in the petition, it is not necessary to repeat them, except to say that the answer concluded by specifically charging that on October 17th, 1931, the petitioner was arrested on a charge of indecent exposure, to which he pleaded guilty, was convicted and fined $100 and costs at the Northwestern police station; that on February 15th, 1935, he was arrested by a patrolman who saw him expose himself to several school girls who were passing the house in which he had his office, and when the case came up for trial petitioner pleaded guilty. He was also indicted for a similar offense committed February 12th, 1935, to which he pleaded guilty, and it was upon this information of the three pleas of guilty and conviction, that the board of dental examiners made the charges, had the hearing, and revoked the license of the petitioner, which he now seeks to set aside by mandamus.

The petitioner demurred to the answer, his first ground being the usual "bad in substance and insufficient in law," and the second in effect that the Act of 1933 granted those licensed prior to that time immunity from any charges of misconduct. The court sustained the petitioner's demurrer to the respondents' answer, and can-

celed the revocation of the petitioner's license or certificate of revocation, on the ground that the petitioner, having been licensed prior to the passage of the Act of 1933, ch. 564, sec. 11, the board was without authority to apply the provisions of that section to the charge of misconduct made against him. In the order the court assigned as the reason for its action the decisions of this court in *Smith v. Gaither*, 144 Md. 484, 125 A. 58, and *Upshur v. Ward*, 94 Md. 778, 51 A. 828, but in our opinion neither of them is applicable to the facts of this case. In *Smith v. Gaither, supra*, certain taxpayers of Baltimore filed a bill to restrain Gaither, the police commissioner, from paying a policeman, Harry Ernest, his salary, thus in effect to dismiss him from the force, on the ground that in his application for appointment he had withheld certain information, which, if then disclosed, would have disqualified him, and that therefore his appointment was void. Subsequent to his appointment, and before the bill was filed, the Legislature passed the Act of 1922, ch. 507, p. 1449, making some changes in the organization of the police department of Baltimore, by which it was provided that, "nothing herein contained shall be construed to legislate out of office any police officer, detective or officer of police now on the force," and it was there held that the effect of this act was to retain him on the force.

In *Upshur v. Ward*, 94 Md. 778, 51 A. 828, Ward, a captain of police, had been removed from office on the ground that his appointment had been illegally made. He applied for a writ of mandamus, which was granted, and on appeal affirmed. After his appointment the Act of 1900, ch. 425, was passed, which provided "that nothing herein contained [in chapter 425] shall be construed to legislate out of office any police officer, detective or officer of police now on the force." The decisions in both cases were that the acts mentioned served to remove any disqualifications of policeman and officer of police theretofore existing.

Chapter 564 of the Acts of 1933 was a repeal and re-

enactment with amendments of article 32 of the Code (1924 Edition), and among its provisions was section 11, which reads as follows: "11. Nothing in this Article, or in any provision of this Code, shall be so construed as to interfere with the rights and privileges of physicians and surgeons duly licensed to practice their profession in this State, nor of persons holding certificates duly issued to them by the State Board of Dental Examiners of Maryland prior to the passage of this Act or of dental students operating under the immediate supervision of their instructors in dental infirmaries or dental schools duly incorporated under the laws of the State of Maryland," and it is this section which the petitioner contends absolves him from the prosecution of the charges preferred against him by the board of dental examiners. In the opinion of this court, it has no such effect.

This section is a repetition and re-enactment of a section of the same number contained in article 32 of the Code of 1924, as enacted by the Act of 1920, ch. 481, which was in effect when the petitioner was licensed to practice dentistry in this State, and was not even interrupted by the Act of 1933, and was as much in force as if it were still the Act of 1920. The law in this state with respect to the repeal and re-enactment of statutes is as stated by Judge Offutt in the recent case of *Ireland v. Shipley*, 165 Md. 90, 98, 166 A. 593, 596, and that is: "It is also settled law in this state that where a statute is repealed and re-enacted with amendments and the amended statute contains substantially the same provisions as the original the continuity of the original as to those provisions is not affected." All that the re-enactment of section 11 meant was that those who were qualified and licensed on June 1st, 1933, would not be disturbed or interfered with in the practice of their profession, and in this respect the cases of *Smith v. Gaither* and *Upshur v. Ward, supra,* do apply.

We therefore hold that the State Board of Dental Examiners was not lacking in authority to hear and determine the charges preferred against the petitioner.

The question then is, Is the offense of "indecent exposure" one in which "moral turpitude" is involved? Ordinarily, the question arises in the case of witnesses who have been convicted of infamous crimes or those involving moral turpitude, and whose credibility is impeached by the asking whether they have been so convicted. *State v. Bixler,* 62 Md. 354, 360.

What is moral turpitude? Lexicographers and courts agree on the definition, but the courts do not agree in its application in characterizing offenses as involving moral turpitude.

*Bouvier's Law Dictionary* (Rawle's Third Rev.) 2247, defines it as, "An Act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Drazen v. New Haven Taxicab Co.,* 95 Conn. 500, 111 A. 861; *Newell on Defamation,* sec. 12; *In re Henry,* 15 Idaho, 755, 99 P. 1054. Turpitude is defined in the *Oxford Dictionary* as, "Base or shameful character; baseness, vileness; depravity, wickedness," *Webster* as, "Inherent baseness or vileness of principle, words or actions; shameful wickedness; depravity." "Moral," in combination with turpitude, is a tautological expression which does nothing more than add emphasis to the word turpitude. *Holloway v. Holloway,* 126 Ga. 459, 55 S. E. 191.

In the following cases it was held there was no moral turpitude: Violation by a physician of the Harrison Anti-Narcotic Act (38 Stat. 785), though the court said it was conceivable that one might be guilty of an offense under that act involving moral turpitude. *State Board of Medical Examiners v. Friedman,* 150 Tenn. 152, 263 S. W. 75; *United States ex rel. Andreacchi v. Curran* (D. C.) 38 Fed. (2nd) 498, 499; publication of defamatory libel of George V., *United States v. Uhl* (C. C. A.) 210 Fed. 860; sending obscene and nonmailable matter through the mails, *In re Dampier,* 46 Idaho, 195, 267 P. 452; seduction under promise of marriage, *In re Wallace,*

323 Mo., 203, 19 S. W. (2nd) 625. In many jurisdictions it was held that violation of the National Prohibition Act (27 U. S. C. A. sec. 1 *et seq.*) did not denote moral turpitude; in some it was held that it did. *In re Bartos* (D. C.) 13 Fed. (2nd) 138.

Offenses in which it was held there was moral turpitude were: Extortion resulting in disbarment of a lawyer, *In re Coffey,* 123 Cal. 522, 56 P. 448; disbarment on charge of embezzlement, *In re Kirby,* 10 S. D. 322, 414, 73 N. W. 92, 907; charging woman with attempt to procure abortion, *Filber v. Dautermann,* 26 Wis. 518; lawyer disbarred for conspiracy to smuggle opium, *In re Shepard,* 35 Cal. App. 492, 170 P. 442; physician's license to practice medicine revoked for using mails to advertise procuring abortions, *Kemp v. Board of Supervisors,* 46 App. D. C. 173, 181; use of mails to prevent conception, *Halstead v. Nelson,* 36 Hun, 149; lawyer suspended for publication of defamatory matter, *Ex parte Mason,* 29 Or. 18, 21, 43 P. 651; lawyer disbarred after conviction on charge of adultery, *Grievance Committee v. Broder,* 112 Conn. 263, 152 A. 292. In Idaho a statute provided that an attorney might be disbarred on conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction is conclusive evidence. The conviction was for petty larceny before a justice of the peace, and the lawyer was disbarred. *In re Henry,* 15 Idaho 755, 99 P. 1054. We have found no case passing on the charge of indecent exposure as involving moral turpitude, but it requires no discussion to argue or prove that the offense is so base, vile, and shameful as to leave the offender not wanting in depravity, which the words "moral turpitude" imply.

The provision of article 32 of the Code (1924), upon which the action of the Board of Dental Examiners in this case is based, is that part of section 8 of article 32, and contained in the Act of 1920, ch. 481, which reads: "Upon presentation to the Board of a certified copy of a court record showing that the practitioner of dentistry has been convicted of a crime involving moral turpitude,

\* \* \* the registration and certificate of the practitioner so offending shall be cancelled."

The petitioner admits in his petition that he "had pleaded guilty to the offense of 'indecent exposure'," and that he had been found "guilty," but "that his testimony before the said Board showed that he had not committed the offense \* \* \* in any public place and that the circumstances were entirely accidental." The answer to which he demurred states facts showing that the exposures were public and intentional. It has been decided that moral turpitude is not involved in a charge unless it is intentional or not innocent in its purpose, or not accidental. *Pullman's Palace-Car Co. v. Central Transportation Co.* (C. C.) 65 Fed. 158; *Rudolph v. United States,* 55 App. D. C. 362, 6 Fed. (2nd) 487; *United States ex rel. Mongiovi v. Karnuth* (D. C.) 30 Fed. (2nd) 825; *In re Kling,* 44 Cal. App. 267, 186 P. 152; *Drazen v. New Haven Taxicab Co.,* 95 Conn. 500, 111 A. 861, 863. This is neither the time nor the place for the petitioner to protest his innocence, or to contend that the offenses were accidental or unintentional. His protestations now are not consistent with pleas of guilty to so vile a charge, which, if unfounded, should have been resisted. The pleas and convictions imply publicity and intention. The first plea and conviction in 1931 might have been overlooked or dismissed as too remote, but it cannot be now when considered along with two similar offenses committed within four days in February, 1935, and thus practically forced the board of dental examiners to act.

There is no charge that the petitioner was denied a hearing or that the action of the board was arbitrary. *Weer v. Page,* 155 Md. 86, 141 A. 518. The only questions remaining then are the authority of the board and the sufficiency of the charges against the petitioner admitted in the petition. The petitioner's demurrer should have been overruled and the respondents' demurrer to the petition sustained.

*Order reversed with costs, and petition dismissed.*